UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

FLOYD SPIVEY,
      Petitioner,

vs.                        Case No.:  5:21cv159/TKW/ZCB

WARDEN POLK,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus case filed under 28 U.S.C. § 2254.  (Doc. 1).

Respondent has answered the petition, and Petitioner has replied.  (Docs.

24, 21-1 through 26-46 and 26-49 to 26-53, Doc. 30).   For the reasons

below, habeas relief should be denied.[1]

## I.    Background

Petitioner was charged in Bay County, Florida, with two counts of

sexual battery.  (Doc. 26-1).  He elected to proceed without counsel and

entered a plea agreement with the prosecution.  (Doc. 26-21 at 6-7).  Even

though he has a habitual offender, under the plea agreement Petitioner

_____

[1] This matter may be resolved without an evidentiary hearing.  Rule 8(a),
Rules Governing Section 2254 Cases.

would receive a sentence of thirteen and a half years' probation. (*Id.*). The trial court accepted the plea agreement and sentenced Petitioner to probation. (Docs. 26-2, 26-3). Petitioner did not appeal.

Not long after beginning his probation, Petitioner was charged with violating its conditions. (Doc. 26-7). The trial court held a violation hearing, found Petitioner guilty of two violations, revoked his probation, and sentenced him to thirteen years of imprisonment on Count I and fifteen years of sex offender probation on Count II. (Docs. 26-8, 26-9, 26-10, Doc. 26-13). Petitioner appealed. (Docs. 26-15, 26-16, 26-17). The Florida First District Court of Appeal (First DCA) affirmed. (Doc. 26-27). Petitioner repeatedly sought postconviction relief in the state courts. (Docs. 26-28, 26-29, 26-30, 26-31, 26-38, 26-40, 26-44, 26-46, 26-49, 26-50). Those efforts failed. (Docs. 26-34, 26-36, 26-39, 26-41, 26-45, 26-51, 26-52, 26-53).

Petitioner then moved his postconviction efforts to federal court by filing the current § 2254 petition. (Doc. 1). His amended petition asserts five grounds for relief. (Doc. 12). The Court will first set out the standard

for federal habeas relief and then discuss each of Petitioner's claims for relief.

## II.    Legal Standard for 28 U.S.C. § 2254 Petitions

When considering a state prisoner's § 2254 habeas petition, a federal court is not typically sitting as an appellate court with the mandate of correcting errors that may have occurred in the state court. *See Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (explaining that a federal habeas proceeding is not "a substitute for ordinary error correction through appeal"). Instead, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court applies a "highly deferential standard of review for evaluating state-court rulings [on the merits], which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

Under AEDPA, a federal court may invalidate a state criminal conviction only if the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based

3

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  The state court's factual determinations "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

"[T]o be contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).  An "unreasonable application" of federal law occurs "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "To meet [the unreasonable application] standard, a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (cleaned up).  Rather, the state court's application of federal law must be "so obviously wrong that its

error lies beyond any possibility for fairminded disagreement." *Id.* (cleaned up). This standard reflects that the "writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." *Ramirez*, 596 U.S. at 377 (cleaned up).

### III.  Discussion

**A.    Ground One (verbatim):  "The state court rejection of the trial court's abused its discretion in revoking Petitioner's probation based on uncharged conduct violated Petitioner's due process rights guaranteed petitioner under the Fourteenth Amendment of the United States Constitution was contrary to unreasonable application of clearly established Federal law as determined by the U.S. Supreme Court and the Federal court of appeal, resulting in a decision that was based on unreasonable determination of the facts in light of evidence presented in the state court proceeding."**

In Ground One, Petitioner claims that the state trial court violated the Due Process Clause of the Fourteenth Amendment by revoking his probation based on conduct that was not alleged in the violation report. (Doc. 12 at 9-11). To understand Petitioner's argument, it is necessary to summarize the proceedings that led to the revocation of his probation.

On December 28, 2018, Petitioner's probation officer—Officer McDonald—filed a violation report alleging that Petitioner had failed to comply with the electronic monitoring requirement. (Doc. 26-5 at 1). On January 14, 2019, Officer McDonald amended that violation report to include an allegation that Petitioner had used "intoxicants to excess" or possessed "drugs or narcotics." (Docs. 26-6, 26-7). The amended violation report alleged that Petitioner had presumptively tested positive for marijuana and cocaine, and the laboratory had confirmed the positive cocaine test. (*Id.*).

The trial court held an evidentiary hearing regarding the alleged violations. (Doc. 26-13). Officer McDonald testified at the hearing. He explained that he required Petitioner to provide a urine sample, and it field-tested positive for marijuana and cocaine. (*Id.* at 9). Officer McDonald testified that he asked Petitioner about the positive test, and Petitioner stated he had smoked marijuana in jail before his release approximately two weeks earlier. (*Id.*). Petitioner further told Officer McDonald that after being placed on probation, "he slipped up and used cocaine." (*Id.*).

Officer McDonald subsequently sent the urine sample to the laboratory. Officer McDonald testified that the laboratory confirmed that Petitioner's sample was positive for cocaine, and a copy of the lab report was admitted into evidence. (*Id*. at 10). Petitioner—who chose to represent himself at the hearing—cross examined Officer McDonald. (*Id*. at 17-18). Petitioner also testified in his own defense, during which he denied having used cocaine or other drugs while on probation. (*Id*. at 23). At the conclusion of the hearing, the trial judge found that Petitioner "willfully violated Condition 7 of…his sex offender probation by virtue of the positive urinalysis for both cocaine and marijuana."[2] (*Id*. at 28). The Court proceeded to revoke Petitioner's probation and impose a sentence of thirteen years of imprisonment. (*Id*. at 40).

Petitioner appealed to the First DCA. (Doc. 26-11). Petitioner's court-appointed attorney filed a brief stating that there were no non-frivolous grounds for an appeal. (Doc. 26-15). But Petitioner filed a *pro se* brief arguing (among other things) that the trial judge violated

---

[2] The trial judge also found that Petitioner violated the terms of his electronic monitoring condition. (Do. 26-13 at 28).

Petitioner's due process rights by revoking his probation for a positive drug test. (Docs. 26-16, 26-17). The First DCA summarily affirmed. (Doc. 26-27).

Before this Court, Petitioner claims that he is entitled to habeas relief because the trial judge violated his due process rights by finding that Petitioner violated Condition 7, which prohibited the use of intoxicants to excess or possessing any drugs. More specifically, Petitioner argues that his probation was revoked based on conduct that was not charged in the violation report. As support for that argument, Petitioner says that the trial judge found he violated probation by testing positive for "cocaine and marijuana," but the violation report only referenced a laboratory-confirmed positive for cocaine. To prevail on this argument, Petitioner must show under 28 U.S.C. § 2254(d)(1) that the First DCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law—i.e., the Fourteenth Amendment's Due Process Clause.

The summary nature of the First DCA's decision does not "lessen the deference that it is due" under AEDPA. *Gill v. Mecusker*, 633 F.3d

1272, 1288 (11th Cir. 2011). Put another way, "Section 2254(d) applies even when there has been a summary denial." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1232 (11th Cir. 2014) (cleaned up). And it is "presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. (cleaned up). In light of the First DCA's summary affirmance, it is this Court's task "to review the record before the [First DCA] to determine what arguments or theories supported or…could have supported, the state court's decision." *Id*. (cleaned up). And Petitioner "may only obtain federal habeas relief by showing there was not reasonable basis for the [First DCA] to deny relief." *Id*. (cleaned up).

Petitioner has not met that burden here. Although probation revocation "is a deprivation that entitles the probationer to due process," the "full panoply of rights due a defendant in criminal prosecutions does not apply to revocations of probation." *United States v. Dennis*, 26 F.4th 922, 927 (11th Cir. 2022) (cleaned up). Thus, "revocation proceedings are more flexible than criminal prosecutions" and are not subject to the same "rigid requirements." *Id*. A probationer is entitled to the "minimum

requirements of due process," which are: (1) written notice of the claimed violation; (2) disclosure of the evidence against him; (3) a hearing where he can present witnesses and evidence; (4) the right to cross examine the government's witnesses; (5) a neutral and detached hearing officer; and (6) a written explanation of the hearing officer's explanation for revoking probation. *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

Here, the First DCA's summary affirmance could have reasonably been based on the conclusion that the state trial court provided Petitioner with the minimum due process required. Looking to the requirements above, the record shows that Petitioner was provided with fair notice of the alleged violations. Petitioner was initially advised in an addendum to an earlier violation report that he had field-tested positive for cocaine and marijuana in violation of Condition 7 of his probation. (Doc. 26-6). The urine sample was laboratory tested, and Petitioner was subsequently advised by an amended violation report that the laboratory confirmed he tested positive for cocaine.[3] (Doc. 26-7 at 2). In addition to the drug

---

[3] The transcript of the revocation hearing shows that Plaintiff was clearly aware of the allegations against him, and he was prepared to defend against them. (Doc. 26-13).

10

violations, Petitioner was notified of alleged violations for failing to comply with the electronic monitoring condition. (*Id.* at 1).

The record shows that the evidence against Petitioner was disclosed to him, and a hearing was held before a neutral and detached judge. (Doc. 26-13). At that hearing, Petitioner presented evidence—including his own testimony. (*Id.* at 18-27). Petitioner also cross examined the government's witness (i.e., Officer McDonald) at the hearing. (*Id.* at 12-17). After the evidence was presented, the judge provided Petitioner with an explanation as to why his probation was being revoked.[4] In that explanation, the judge opined that the prosecution had met its burden of showing by a preponderance of the evidence that Petitioner violated Conditions 7 (drugs)[5] and Condition 38 (electronic monitoring). (*Id.* at

---

[4] Although the trial judge's explanation was oral as opposed to written, it was transcribed in written form. (*See* Doc. 26-13 at 27-28). And the Eleventh Circuit has held that "oral findings, if recorded or transcribed, can satisfy" due process requirements if "those findings create a record sufficiently complete to advise the parties and the reviewing court of the reasons for the revocation of [probation] and the evidence the decision maker relied on." *United States v. Ataya*, 145 F. App'x 331, 333 (11th Cir. 2005) (cleaned up). In this case, the trial judge's findings (as transcribed) are sufficient to meet that standard.

[5] Petitioner makes much of the fact that the judge said Petitioner had tested positive for cocaine and marijuana when the laboratory test only

27-28). And that finding was not "so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment." *Newmones v. Sec'y, Fla. Dep't of Corr.*, 546 F. App'x 812, 816 (11th Cir. 2013).

Because there was a reasonable basis for the First DCA to deny Petitioner relief on his due process argument, Petitioner has not demonstrated that the state court's rejection of Ground One was contrary to, or an unreasonable application of, clearly established federal law as set forth by the U.S. Supreme Court.

**B.    Ground Two (verbatim): "The state court rejection of the trial courts abused its discretion in revoking Petitioner's probation based on excessive use of intoxicants involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, resulting in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the state court proceeding."**

---

confirmed he was positive for cocaine. That discrepancy is no significance here—it is undisputed that the laboratory confirmed Petitioner had tested positive for cocaine and testing positive for cocaine constituted a violation of probation.

Petitioner claims in Ground Two that even though there was evidence that he ingested cocaine, there was no evidence that he used cocaine "to excess" in violation of Condition 7 of his probation. (Doc. 12 at 13-14). Petitioner's argument is effectively a claim that there was insufficient evidence to prove a violation of Condition 7. (*Id.* at 14). A finding that a defendant violated the conditions of probation is invalid under the Fourteenth Amendment's Due Process Clause only if the finding was "totally devoid of evidentiary support." *Newmones*, 546 F. App'x at 816.

Petitioner presented this claim to the First DCA, and (as mentioned above) the First DCA summarily affirmed. (Doc. 26-18). The First DCA's rejection of Petitioner's argument could have been reasonably based on the theory that there was sufficient evidence to show Petitioner violated Condition 7 by "possess[ing] any drugs or narcotics" without a prescription. Petitioner has emphasized that Condition 7 prohibited him from "us[in]g intoxicants to excess," but Condition 7 also prohibited him from possessing drugs. And the fact that a person has cocaine in his body is strong evidence of cocaine possession. After all,

cocaine does not just magically appear inside a person's body—it ends up there because a person put it there. And to put cocaine inside the body, a person would almost always have to first possess cocaine. *See United States v. Hammonds*, 370 F.3d 1032, 1035 (10th Cir. 2004) (recognizing "the unremarkable observation that a person cannot use a drug without possessing it" and stating that "inferring possession of a drug from the consumption of that drug is just as sensible as inferring, from the statement 'I ate a hamburger for lunch,' that the person possessed the hamburger before wolfing it down") (cleaned up).

Moreover, Officer McDonald testified at the hearing that Petitioner had admitted to "slip[ing] up" and using cocaine while on probation. (Doc. 26-13 at 9-10). And the combination of a positive drug test and evidence that Petitioner admitted to drug use was sufficient to render the trial judge's revocation of Petitioner's probation not "totally devoid of evidentiary support," *Newmones*, 546 F. App'x at 816. *See Bell v. State*, 179 So. 3d 349, 351 (Fla. 4th DCA 2015) (holding that a positive drug test from the laboratory "constituted competent, substantial evidence sufficient to support a finding that the defendant violated his or her

14

probation by using or possessing drugs"); *see also United States v. Crace*, 207 F.3d 833, 837 (6th Cir. 2000) (explaining that a "defendant's positive drug test combined with his admission of use of a controlled substance mandates a finding that the defendant possessed drugs").

For the reasons above, Petitioner has not demonstrated that the First DCA's rejection of his federal due process challenge to the sufficiency of the evidence to revoke probation was contrary to, or an unreasonable application of, clearly established federal law as set forth by the U.S. Supreme Court. Accordingly, Petitioner is not entitled to habeas relief on Ground Two.

    **C.**   **Ground Three (verbatim): "The state court's rejection of the issue of ineffective assistance of appellate counsel in failing to assert that the trial court committed fundamental error by failing to renew the offer of assistance of counsel at a critical stage of the proceeding involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court."**

        **Ground Four (verbatim): "The state court's rejection of the issue of ineffective assistance of appellate counsel in failing to assert that the trial court committed fundamental error by failing to hold a Faretta hearing after Petitioner clearly and unequivocally requested to represent himself involved an unreasonable application of clearly established**

> **federal law as determined by the United States Supreme Court.**"

In Grounds Three and Four, Petitioner alleges ineffective assistance of appellate counsel (IAAC). Because both grounds involve similar arguments and the same legal standard, they will be considered together. And neither have merit for the reasons explained below.

The record[6] shows that on September 6, 2018, Petitioner requested to represent himself against the sexual battery charges. (Doc. 26-36 at 1). At that time, the trial judge held a hearing as required by *Faretta v. California*, 422 U.S. 806 (1975). (*Id.*). At the conclusion of the *Faretta* hearing, the trial judge authorized Petitioner to represent himself with standby counsel (*Id.*; Doc. 12 at 17). On December 14, 2018, Petitioner appeared before the trial court for a change of plea hearing. (*Id.*). During that hearing, Petitioner pleaded guilty to sexual battery under a plea agreement that—despite his habitual felon status—allowed him to receive a probationary sentence. (*Id.*; Doc. 24 at 2). The trial court

---

[6] The record of the proceedings on the original sexual battery charges is limited. It includes docket sheets with descriptive text, the plea agreement, the judgment, and the order placing Petitioner on sex offender probation. (Docs. 26-3, 26-3, 26-14, 26-21).

proceeded to sentence Petitioner to thirteen and a half years' probation, as contemplated by the plea agreement. (Doc. 26-3 at 1).

Petitioner was subsequently charged with violating his probation as discussed above. On February 27, 2019, the trial court held a hearing regarding the violation. Petitioner was accompanied at the hearing by court-appointed counsel, Tyler Land. (Doc. 26-12 at 3). During that hearing, Petitioner stated that he wished to either have a new court-appointed attorney or to represent himself. (*Id*.). After conducting an inquiry, the trial judge refused to appoint a new attorney. (*Id*. at 10-11, 13). Petitioner then requested to represent himself in the probation violation proceeding, with Attorney Land serving a standby counsel. (*Id*. at 13-15).

The trial judge explained that Petitioner had a *Faretta* hearing several months earlier, and the judge concluded (with Petitioner's agreement) that there was no reason to conduct another *Faretta* hearing because "[n]othing has really changed since then, [and Petitioner] is capable of representing himself." (*Id*. at 14). The trial judge further informed Petitioner that, "You'll represent yourself. I find you're

competent to do that….I've found that previously. I'm happy for you do to that. You're always courteous." (*Id*. at 11-12). The trial judge provided Petitioner with a continuance of thirty days to prepare for the violation hearing. (*Id*. at 11, 15).

The violation hearing occurred on March 27, 2019, and Petitioner represented himself with Attorney Land present as standby counsel. Before the hearing started, the trial judge stated the following: "Mr. Spivey, once again, this is a critical point in the litigation, and I am required to ask you if you will permit me to reappoint Mr. Land to represent you at this time?" (*Id*. at 3). Petitioner refused the offer and elected to proceed *pro se*. (*Id*.). As previously discussed, Petitioner was found to have violated his probation. And it was revoked.

Petitioner filed a notice of appeal from the probation revocation judgment. (Doc. 26-11). Attorney Joel Arnold was assigned to represent Petitioner in that appeal to the First DCA. Attorney Arnold submitted a brief stating that there were no nonfrivolous arguments to raise. (Doc. 26-15). Petitioner then filed his own *pro se* brief, which did not raise either of the issues Petitioner now says Attorney Arnold was ineffective

18

for failing to pursue.[7]  (*Id.*).  The First DCA summarily affirmed.  (Doc. 26-36).

Next, Petitioner filed a habeas petition in the First DCA.  That petition claimed that his appellate counsel, Attorney Arnold, was ineffective for not arguing that the trial court erred by:  (1) failing to renew the offer of counsel at the plea and sentencing on the original sexual battery charges, and (2) failing to conduct a new *Faretta* inquiry before the violation hearing.  (Doc. 26-38 at 8-12).  The First DCA rejected the claims "on the merits," without stating its reasons.  (Doc. 26-39).

Petitioner now raises those same two IAAC claims before this Court.  Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under *Strickland*, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) prejudice resulted.  *Strickland*, 466 U.S. at 687.  Under the deficiency prong, the inquiry focuses on "whether counsel's assistance was reasonable considering all the circumstances."

----

[7] Instead, Petitioner argued that the trial court abused its discretion by finding that he willfully and substantially violated the terms of his probation.  (Doc. 26-16).

*Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  As for the prejudice prong, the inquiry focuses on whether the petitioner has shown there is a "reasonable probability" that the outcome would have been different absent counsel's deficient performance.  *Id.* at 694.  To make the prejudice showing, the "likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011).[8]  "An ineffective-assistance claim can be decided on either the deficiency or prejudice prong."  *Sealey v. Warden*, 954 F.3d 1338, 1355 (11th Cir. 2020).

The Court will first discuss Ground Three, which alleges Attorney Arnold provided ineffective assistance by not arguing that the trial court

---

[8] Both the *Strickland* standard and the standard for relief under § 2254 are "highly deferential."  *Richter*, 562 U.S. at 105.  And when—in a case like the current one—"the two apply in tandem, review is doubly" deferential.  *Id.* (cleaned up).  The Supreme Court has warned that "habeas courts must guard against the danger of equating unreasonableness under *Strickland*['s]" deficient performance prong with "unreasonableness under § 2254(d)."  *Id.*  Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

should have renewed the offer of counsel prior to Petitioner's change of plea and sentencing on the original sexual battery charges. The First DCA's rejection of this IAAC argument—when made in Petitioner's state habeas proceeding—could have been reasonably based on the theory that it would have been a meritless argument and attorneys do not perform deficiently by failing to raise meritless arguments. *See Pinkney v. Secy', DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (explaining that "an attorney is not required to raise on appeal issues that will not lead to any relief for the defendant"). The argument would have been meritless for two reasons.

First, an argument regarding the propriety of Petitioner's guilty plea and sentencing on the sexual battery charge was beyond the scope of Attorney Arnold's representation and would have been untimely. Attorney Arnold represented Petitioner on his appeal from the March 27, 2019, probation revocation. (Doc. 26-15 at 4). Attorney Arnold did not represent Petitioner on an appeal from the December 14, 2018, guilty plea and sentencing. Nor could he have been because the docket reflects that Petitioner did not file a notice of appeal from his December 14, 2018,

guilty plea and sentencing. (Doc. 26-14 at 3-9). The only notice of appeal filed by Petitioner was on April 8, 2019, and it specifically identified the appealable order as the probation revocation judgment entered on March 27, 2019. (Doc. 26-11). Because Petitioner did not timely file a notice of appeal[9] regarding the December 14, 2018, judgment and Attorney Arnold did not represent Petitioner in connection with the December 14, 2018, judgment, Attorney Arnold could not have attacked the validity of the December 14, 2018, judgment.[10]

Second, it also would have been fruitless for Attorney Arnold to challenge the December 14, 2018, proceedings because Petitioner did not preserve his right to appeal by filing a timely motion to withdraw his plea in the trial court. Unless the right to appeal has been expressly reserved by a defendant, Florida law provides that a defendant may only appeal from a guilty plea or no contest plea if (1) the trial court lacked jurisdiction, (2) there was a violation of a plea agreement and a motion

---

[9] A notice of appeal must be filed "within 30 days of rendition of the order to be reviewed." Fla. R. App. P. 9.110(b).

[10] The state court docket shows that Petitioner was appointed appellate counsel on April 9, 2019. (Doc. 26-14 at 10).

to withdraw plea was filed,[11] (3) the plea was involuntary and a motion to withdraw plea was filed, (4) a sentencing error that has been preserved, or (5) authorized by another provision of law. Fla. R. App. P. 9.140(b)(2)(A)(ii)(a)-(e). Thus, under Florida law "the failure to raise" a challenge to a guilty or no contest plea "in a motion to withdraw" filed with the trial court "is an absolute bar to review" by the appellate court. *Melendez v. State*, 339 So.3d 498, 501 (Fla. 2d DCA 2022); *see also State v. Thompson*, 735 So.2d 482, 485 (Fla. 1999) ("We find that an appeal from a guilty plea should never be a substitute for a motion to withdraw a plea.") (cleaned up).

In this case, there is nothing before the Court showing that Petitioner expressly reserved the right to appeal in his plea agreement. Nor does the docket show that Petitioner filed a motion to withdraw his plea with the state trial court. (Doc. 26-14 at 11-12). Thus, Attorney Arnold did not perform deficiently by failing to challenge the legality of Petitioner's December 14, 2018, plea and sentencing because such a

---

[11] A motion to withdraw must be filed within thirty days of the sentencing. *See* Fla. R. Crim. P. 3.170(l).

challenge had not been preserved. *See Pinkney*, 876 F.3d at 1298 (explaining that an appellate attorney "was not professionally deficient" for failing to raise "issues that were not properly preserved in the trial court"); *see also Fla. Dep't of Corr. V. Fana*, 593 F. App'x 954, 960 (11th Cir. 2014) (finding that appellate attorney was not deficient for failing to raise an unpreserved issue). Accordingly, the First DCA's rejection of Petitioner's IAAC claim raised in Ground Three was neither contrary to, nor an unreasonable application of, clearly established federal law as set forth by the U.S. Supreme Court.

Moving now to Ground Four, Petitioner claims that Attorney Arnold provided ineffective assistance by not challenging the trial court's failure to hold a new *Faretta* hearing before the probation revocation hearing. As mentioned previously, the record reflects that Petitioner chose to represent himself in connection with the sexual battery charges. The trial court held a *Faretta* hearing and thereafter permitted Petitioner to represent himself regarding those charges. Shortly after beginning his term of probation resulting from the sexual battery charges, probation revocation proceedings were commenced. Petitioner again chose to

represent himself during the probation revocation hearing.[12]   After

Petitioner informed the trial judge of that choice, the following discussion

occurred:

> THE COURT:   I've already, unless something's changed
> between the last time we did our *Faretta*, which wasn't that
> long ago, Mr. Spivey, unfortunately.
> THE DEFENDANT:  I remember, I remember.
> THE COURT:   You know, you—we had a very thorough
> *Faretta* inquiry.  I'd be happy to go back over that with you
> again today, but you were fully aware of the consequences of
> representing yourself.  You were fully aware of the difficulties
> and the challenges that brings because you're not a lawyer.
> You had already informed me of your prior medical history
> and your prior experiences in court.   I'm remembering
> everything you said.   I imagine you remember all the
> questions I asked you.
> THE DEFENDANT:  Yes, sir.
> THE COURT:  Is that true?
> THE DEFENDANT:  Yes, I do remember.
> THE COURT:  All right.  Do we need to go over that or are
> you confident you still want to represent yourself if I relieve
> Mr. Land?
> THE DEFENDANT:  If the Court, if the Court would, your
> Honor, if you would give me—I would feel more comfortable
> representing, representing [sic] myself with being granted the
> time to be able to have some time to get all the documents that
> he, that he showed me yesterday that I've never seen in my
> possession and to be able to prepare my own defense, your

---

[12] Although Petitioner represented himself during the evidentiary hearing phase of the revocation proceeding, he accepted the representation of counsel during the sentencing phase of the revocation hearing.  (Doc. 26-13 at 28-29).

Honor. I believe I could, I could do it myself. I'd feel better prepared to do it myself, your Honor.

THE COURT: All right. Well, 30 days is what I'm going to give you.

THE DEFENDANT: Okay.

. . . .

THE COURT: I'll relieve Mr. Land. You'll represent yourself. I find you're competent to do that.

THE DEFENDANT: Yes, sir.

THE COURT: I've found that previously. I'm happy for you to do that. You're always courteous.

THE DEFENDANT: Yes, sir.

THE COURT: I think you have a fairly good grasp of how we're going to conduct the hearing. And you'll recall this is going to be one of those situations where the trial, the judge is the jury.

THE DEFENDANT: Yes, sir.

THE COURT: You don't get a separate jury.

THE DEFENDANT: Yes, sir.

THE COURT: And the State is only required to prove your guilt by what we call preponderance—

THE DEFENDANT: Preponderance, yes, sir.

THE COURT: —evidence, so it's just a greater weight of the evidence. Hearsay is permitted in evidentiary hearings, although it can't be the sole basis for your conviction. And you're at a great disadvantage without your lawyer.

THE DEFENDANT: I understand, I understand.

. . ..

THE COURT: . . . . And so in view of Mr. Spivey's insistence that he represent himself, I also find that based on the prior testimony that he provided in our *Faretta* inquiry that wasn't, couldn't have been more than six months ago.

. . . .

THE DEFENDANT: Right. The *Faretta* was September the 6th when you granted me to represent myself. Last year, September the 6th, your Honor.

26

> THE COURT:   So that's when—and I remember that testimony, as I said.  Nothing has really changed since then.  Mr. Spivey is capable of representing himself.  He has a constitutional right to do so . . . .

(Doc. 26-12 at 10-14).  The trial judge then appointed Attorney Land to serve as stand-by counsel.  (*Id.* at 15).

On appeal from the revocation judgment, Petitioner's appellate attorney (Attorney Arnold) did not challenge the trial judge's failure to conduct a new *Faretta* inquiry before the revocation hearing.  Petitioner now claims in Ground Four that Attorney Arnold's failure to make that challenge constituted ineffective assistance of counsel.  Petitioner raised this argument before the First DCA in his state habeas petition (Doc. 26-38 at 82), and it was rejected on the merits without discussion.  (Doc. 26-39).

In *Faretta*, the Supreme Court held that a criminal defendant has the Sixth Amendment right to represent himself.  *Faretta v. California*, 422 U.S. 806, 819 (1975).  Because a defendant relinquishes the benefits associated with the right to counsel when he represents himself, "he must knowingly and intelligently forego those relinquished benefits."  *Id*. at 835.  To ensure that a defendant's waiver of counsel is knowing and

27

intelligent, "ideally a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding *pro se* and make an explicit finding that he has chosen to represent himself with adequate knowledge of the possible consequences." *Nelson v. Alabama*, 292 F.3d 1291, 1296 (11th Cir. 2002). This type of hearing is commonly referred to as a *Faretta* hearing. And although a hearing is ideal, the *Faretta* standard "would be satisfied even in the absence of a hearing, if the record shows that a defendant knowingly and voluntarily elected to represent himself." *Id*. at 1297.

In this case, it is undisputed that the trial judge conducted a *Faretta* hearing in connection with Petitioner's request to represent himself on the sexual battery charges. The question today is whether an additional *Faretta* hearing was necessary before Petitioner represented himself (approximately six months later) at the revocation hearing. Or, more precisely, because this is a habeas case under § 2254, the question is whether the First DCA's rejection of that argument was contrary to, or an unreasonable application, of clearly established federal law as set forth by the U.S. Supreme Court. The answer is no.

28

Support for that conclusion comes from the Eleventh Circuit's decision in *Nelson v. Alabama*, 292 F.3d 1291 (11th Cir. 2002). In *Nelson*, a defendant sought to represent himself during a state postconviction proceeding. *Id*. at 1293. The state trial judge held a *Faretta* hearing and permitted the defendant to represent himself. *Id*. Several years later, a federal court overturned the defendant's sentence and remanded the matter back to the state trial court for resentencing. *Id*. at 1293-94. The same state trial judge who held the earlier *Faretta* hearing conducted the resentencing. *Id*. Prior to the re-sentencing, the defendant stated his desire to represent himself. *Id*. at 1294. Without conducting a new *Faretta* hearing, the trial judge permitted the defendant to proceed *pro se* with standby counsel during the resentencing. *Id*.

After the re-sentencing and his state appeals, the defendant sought federal habeas relief on the ground that the state trial judge should have conducted a new *Faretta* hearing before the resentencing. *Id*. The Eleventh Circuit rejected that argument. In doing so, the *Nelson* court explained that the same judge who conducted the earlier *Faretta* hearing presided over the resentencing. *Id*. at 1296. At the resentencing, the

29

judge "made express reference" to the earlier *Faretta* hearing, and the judge "explicitly articulated his understanding that the [earlier *Faretta*] finding" applied to the resentencing. *Id.* The *Nelson* court further explained that despite the trial judge's failure to conduct a second *Faretta* hearing, "the record in the instant case overwhelmingly supports the reasonableness of the decision of the state courts that [the defendant] understood the risks of self-representation, and knowingly, intelligently, and voluntarily waived his right to counsel." *Id.* at 1301. Moreover, the trial judge "actually held a *Faretta* hearing" previously and "made appropriate *Faretta* findings," and the "record indicates that [the trial judge] observed no diminution in [the defendant's] understanding of the relevant matters over the years" since the *Faretta* hearing. *Id.*[13]

---

[13] The Eleventh Circuit also addressed a similar issue in *McClain v. Sec'y, Dep't of Corr.*, 855 F. App'x 610 (11th Cir. 2021). In *McClain*, the court refused to grant habeas relief on a claim that the trial judge should have conducted a second *Faretta* hearing before trial when such a hearing had been held earlier in the case. According to the Eleventh Circuit, the Supreme Court has not clearly held that "there needs to be a new waiver" of counsel at each stage of a criminal proceeding. *Id.* at 613-14. Thus, "it was not unreasonable for the [state appellate court] to decide that a waiver of counsel one month before trial, at a full *Faretta* hearing…was sufficient for the trial stage of the proceeding." *Id.* at 614.

The current case is indistinguishable in all key respects from *Nelson*. Petitioner had a full *Faretta* hearing on September 6, 2018, after which the trial judge found he had waived his right to counsel and could proceed *pro se*. When approximately six months later—well short of the several years at issue in *Nelson*—Petitioner appeared before the same judge and requested to represent himself in the probation revocation proceedings, the judge referred back to the prior *Faretta* hearing and permitted Petitioner to represent himself. In doing so, the judge expressly referenced his prior findings and found there had been no change in Petitioner's competence or understanding since the earlier hearing. There is no clearly established Supreme Court precedent that required the trial judge to conduct an entirely new *Faretta* hearing in connection with the revocation of probation proceedings. Thus, "[o]n the basis of all these circumstances, [the Court] readily conclude[s] that the decision of [the trial judge]…, and the affirmance by the [Florida] appellate courts, are neither contrary to, nor involve an unreasonable application of, clearly established federal law as determined by the

31

Supreme Court of the United States." *Nelson*, 292 F.3d at 1302.

Accordingly, Petitioner is not entitled to habeas relief on Ground Four.

**D.  Ground Five (verbatim):  "For the record, I, Floyd Spivey, avers that I am actual innocent of committing any crime against the State of Florida or any person/citizen therein, and the following facts will show proof of claim in support."**

In Ground Five, Petitioner claims that he is actually innocent of the sexual battery charges that led to the probationary sentence that was subsequently revoked in favor of a custodial sentence. (Doc. 12 at 26-40). Specifically, he alleges Adriana Harris (the victim) and Jacob Cooper (Harris' boyfriend) fabricated allegations that Petitioner sexually battered Ms. Harris on June 24 and 25, 2017.  (*Id.* at 26-27, 38). Petitioner further claims that the public defender who initially represented him provided fraudulent information to the trial court. (*Id.* at 30).  And he says that the public defender initially assigned to his case and the state prosecutor were involved in a conspiracy to withhold exculpatory evidence and to produce fraudulent documents.  (*Id.* at 33-36).

Petitioner's actual innocence claim is barred by Eleventh Circuit precedent, which "forbids granting habeas relief based upon a claim of actual innocence…, at least in non-capital cases." *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007); *see also Cunningham v. Dist. Atty's Office*, 592 F.3d 1237, 1272 (11th Cir. 2010) (stating that "this Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases). Because this Court is bound by Eleventh Circuit precedent, the actual innocence claim Petitioner raises in Ground Five should be rejected.[14] *See Collins v. Sec'y, Dep't of Corr.*,

---

[14] Plaintiff has cited *Schlup v. Delo*, 513 U.S. 298 (1995), for the proposition that a habeas court may consider actual innocence claims. (*See* Doc. 30 at 15). But *Schlup* does not apply here—*Schlup* applies when the state has asserted procedural default, and a petitioner is arguing actual innocence in an attempt to bypass the procedural default. *See Rozelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1010-11 (11th Cir. 2012) (explaining the difference between a freestanding claim of actual innocence and situations when actual innocence is a gateway to raise claims otherwise barred by procedural default or untimeliness). Here, Petitioner is not using actual innocence as a gateway to avoid procedural default or untimeliness (indeed, the state has not asserted procedural default or untimeliness in this case). Rather, Petitioner is asserting actual innocence as a freestanding basis for obtaining habeas relief. And he cannot prevail on such a claim. *See Raulerson v. Warden*, 928 F.3d 987, 1004 (11th Cir. 2019) (stating that a freestanding claim of actual innocence is "a nonstarter" except in death penalty cases).

809 F. App'x 694, 696 (11th Cir. 2020) (holding that because the habeas petitioner's "freestanding actual innocence claim is not cognizable…the district court properly rejected it").

## IV.   Conclusion

For the reasons above, Petitioner's § 2254 petition should be denied.

## V.   Certificate of appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether

the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1.    The petition for writ of habeas corpus (Doc. 1) be **DENIED** and this case be **DISMISSED**.

2.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 8th day of August 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

36